UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KENT GREENLEY, *individually and on behalf of all others similar situated,*<br><br>                                        Plaintiff,<br><br>v.<br><br>AVIS BUDGET GROUP INC., *a Delaware and New Jersey corporation*<br><br>                                        Defendant. | Case No.: 19-cv-00421-GPC-AHG<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION.**<br><br>**(ECF No. 43.)** |

In the instant case, Plaintiff David Kent Greeley ("Plaintiff"), and the proposed Class, sue Defendant Avis Budget Group, Inc., ("Defendant") over the gathering and retention of Plaintiff's private cellphone information by Defendant's rental vehicle. (ECF No. 38.) Defendant has filed a motion to have Plaintiff's claims heard in arbitration. (ECF No. 43.) Defendant's motion raises four issues bearing on the arbitrability of Plaintiff's claims: (1) was the Rental Jacket, (ECF No. 43-3, Ex. 2), properly incorporated into the Rental Agreement, (ECF No. 43-3, Ex. 1); (2) does the Rental Agreement preclude Plaintiff from seeking public injunctive relief in any forum such that

1

it would be void against California public policy; (3) is the contract unconscionable for limiting Plaintiff's access to Court pursuant to the California Rental Passenger Vehicle Transactions Law; and, lastly, (4) does the Rental Agreement exempt Plaintiff's claims from arbitration as "personal injury" claims.

The Court finds that the Plaintiff agreed to enter a contract which incorporates the Rental Jacket, permits claims for public injunctive relief in arbitration, and is not unconscionable. However, the Court concludes that the Rental Agreement exempts Plaintiff's claims from arbitration as claims for "personal injury." Consequently, the Court **DENIES** Defendant's motion and will not compel arbitration.

## I.   Factual Background.

### A. The Parties & Claims.

Plaintiff brings this proposed class action against Defendant, a car rental company, for failing to "promulgate or maintain adequate policies and procedures to safeguard" the private data of consumers who pair their mobile devices with Defendant's rental vehicles and their "Infotainment" systems.[1] (ECF No. 38 at ¶ 1.) Plaintiff initially filed this matter in the Superior Court of California, County of San Diego. (ECF No. 1-3.) Defendant then filed a notice of removal on March 4, 2019. (ECF No. 1-2.) Plaintiff has since amended the complaint three times, filing the Third Amended Complaint ("TAC") on September 17, 2019. (ECF No. 38.)

In the TAC, Plaintiff raises three distinct causes of action. In the first cause of action, Plaintiff alleges that "Defendant has committed a serious invasion of the Class members' privacy interests," which are protected under Article I, section 1, of the

---

[1] "The word 'infotainment' is a blanket term generally used to describe in-car communications, entertainment and data presented to the driver – namely, the central screen with its associated radio, media and navigation functions. It's a portmanteau of information and entertainment." Jake Lingeman, *What is Infotainment? Autoweek Explains*, AUTOWEEK.COM (June 08, 2017 08:00 AM), available at https://autoweek.com/article/technology/what-infotainment-autoweek-explains.

2

California Constitution, by gathering Class members' confidential information and failing to delete it after a rental vehicle is returned. (*Id.* at ¶¶ 64–66.) In the second cause of action, Plaintiff alleges that Defendant used "electronic surveillance technology" (i.e., the vehicles' "GPS technology and/or automotive infotainment systems") to obtain Class members' private data in violation of California's Rental Passenger Vehicle Transactions Law, Cal. Civ. Code § 1939.01 *et seq*. (ECF No. 38 at ¶¶ 1, 73–80.) Lastly, with respect to the third cause of action, Plaintiff alleges that that Defendant violates California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, ("UCL") by committing unfair business acts, including operating a rental car company without "responsible policies and procedures" and "engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class." (ECF No. 38 at ¶¶ 83–98.)

## B. The Rental Car Process and Arbitration Agreement.

Plaintiff is a customer of Defendant's subsidiaries. During the applicable period, Plaintiff first rented from Avis Rent A Car System, LLC ("ARACS"), one of Defendant's subsidiaries, on January 23–26, 2016 in Burbank, California. (ECF No. 43-3 at ¶¶ 10–12.) Plaintiff then initially rented from Budget Rent A Car System, LLC ("BRACS"), another of Defendant's subsidiaries, on March 26–27, 2018 in Burbank, California. (ECF No. 43-3 at ¶¶ 15–16.) At both initial rentals, and during subsequent rentals from the two subsidiaries, Plaintiff signed Defendant's Rental Agreements and obtained the accompanying Rental Jackets.[2]

---

[2] For the purposes of this order, the Court will refer to a single Rental Agreement and Rental Jacket as the ARACS and BRACS documents are identical. (*See* ECF No. 43-3, Ex. 1 (ARACS Rental Agreement); ECF No. 43-3, Ex. 2 (ARACS Rental Jacket); ECF No. 43-3, Ex. 3 (BRACS Rental Agreement); ECF No. 43-3, Ex. 4 (BRACS Rental Jacket)). Also, the Court will refer to Defendant and its subsidiaries collectively as "Avis" or "Defendant."

3

During a car rental process, Avis requires customers to "review and sign a rental agreement assenting to certain terms and conditions" of the rental "before permitting that customer to depart with the car." (*Id.* at ¶ 6.) Above the signature line, the Rental Agreement provides: "I agree the charges listed above are estimates and that I have reviewed&agreed [sic] to all notices&terms [sic] here and in the rental jacket." (ECF No. 43-3, Ex. 1.) The Rental Jacket is a separate, one-page document which lists "all of the rental terms and conditions" in thirty-two (32) paragraphs in small font on the front and back. (*See* ECF No. 43-3 at ¶ 8; ECF No. 43-3, Ex. 2.)

Among the paragraphs of the Rental Jacket can be found the Arbitration Provision. (ECF No. 43-3, Ex. 1 at ¶ 29). In relevant part, the provision states:

> **Arbitration**. . . Dispute Resolution: Except as otherwise provided below, in the event of a dispute that cannot be resolved informally through the pre-dispute resolution procedure, all disputes between you and Avis arising out of, relating to or in connection with your rental of a vehicle from Avis and these Rental Terms and Conditions shall be exclusively settled through binding arbitration through the American Arbitration Association ("AM") pursuant to the AM's then-current rules for commercial arbitration. There is no judge or jury in arbitration. Arbitration procedures are simpler and more limited than rules applicable in court and review by a court is limited. YOU AND AVIS AGREE THAT ANY SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.

(*Id.*) (emphasis in original.) In the very next sentence, the Arbitration Provision includes a **severance clause**: "[n]otwithstanding any provision in these terms to the contrary, if the class-action waiver in the prior sentence is deemed invalid or unenforceable, however, neither you nor we are entitled to arbitration." (*Id.*) The Arbitration Provision also includes an express **caveat** exempting certain claims from arbitration: "Disputes and claims that are within the scope of a small claims court's authority, as well as disputes and claims regarding personal injury and/or damage to or loss of a vehicle related to your Avis rental, are exempt from the foregoing dispute resolution provision." (*Id.*)

4

**C. Procedural Background.**

On October 17, 2019, Defendant filed a motion to compel arbitration and to dismiss, or in the alternative, stay the proceedings. (ECF No. 43-1.) On November 21, 2019, Plaintiff filed a response. (ECF No. 47.) On December 20, 2019, Defendant filed a reply. (ECF No. 48.)

On January 10, 2020, the Court heard Defendant's motion. (ECF No. 50.) On January 22, 2020, Defendant filed a supplemental brief. (ECF No. 51.) On January 23, 2020, Plaintiff then filed an opposition to the supplemental brief. (ECF No. 52.) The Court now addresses the arguments raised by the Parties.

**II.    Legal Standard for Motion to Compel Arbitration.**

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. *See* 9 U.S.C. § 2. Because the Rental Agreement is "a contract evidencing a transaction involving commerce," it is subject to the FAA. *Id.* Pursuant to § 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the] agreement." *Id.* at § 4.

By its terms, the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The Court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999). If the response is affirmative on both counts, then the Act requires the Court to enforce the arbitration

5

agreement in accordance with its terms. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

While generally applicable defenses to contract, such as fraud, duress, or unconscionability, may invalidate arbitration agreements, the FAA preempts state law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). There is generally a strong policy favoring arbitration, which requires any doubts to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, where a party challenges the existence of an arbitration agreement, "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

## III. The Parties Entered in a Valid, Binding Agreement to Arbitrate.

The Court first addresses the three arguments bearing upon the existence of a valid contract: (A) whether the Rental Jacket was incorporated by reference, (B) whether the Arbitration Provision violates California public policy, and (C) whether the Arbitration Agreement is unconscionable. As to these issues, the Court finds in favor of Defendant.

### A. The Rental Jacket Was Incorporated by Reference.

"[A]rbitration is a matter of contract." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Hence, while the FAA reflects a "liberal federal policy favoring arbitration," *Concepcion*, 563 U.S. at 339, that policy "cannot displace the necessity for a *voluntary* agreement to arbitrate." *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 59 (2013) (citation omitted). Consequently, a court first decides "whether a valid agreement to arbitrate exists." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see Estate of Arce by & through Huerta v. Panish Shea & Boyle LLP*, No. 19-CV-0500-AJB, 2019 WL 6218781, at *4 (S.D. Cal. Nov. 20,

6

2019) ("the threshold issue of whether a contract was ever formed is for this Court to resolve").

State law controls whether the parties have agreed to a contract. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). And, under California law, no contract can be formed unless the parties consent to be bound by the contract. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).

California law permits parties to consent to, and incorporate by reference into their contract, the terms of another document. *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994). A properly incorporated document must meet three criteria: (1) "the reference must be clear and unequivocal;" (2) "the reference must be called to the attention of the other party and he must consent thereto;" and (3) "the terms of the incorporated document must be known or easily available to the contracting parties." *Socoloff v. LRN Corp.*, 646 F. App'x 538, 539 (9th Cir. 2016) (quoting *Shaw v. Regents of Univ. of Calif.*, 58 Cal. App. 4th 44, 54 (1997)). Ultimately, the party seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

Here, the Parties contest each of the *Socoloff* factors. *See Socoloff*, 646 F. App'x at 539. For the following reasons, the Court finds that the Rental Agreement's reference to the Rental Jacket satisfies *Socoloff* and properly incorporates the Arbitration Provision.

### 1. First *Socoloff* Factor: The Rental Agreement Contains an Adequately Clear Reference to the Rental Jacket.

With respect to the first factor, Plaintiff contends that the "Rental Agreement falls far short of clearly and unequivocally incorporating the Terms and Conditions because the term 'rental jacket' is undefined in the Rental Agreement and because the Terms and Conditions themselves are not titled 'Rental Jacket.'" (ECF No. 47 at 13.) Defendant asserts the opposite, (ECF No. 48 at 8), and the Court agrees.

While the Rental Agreement does not define the term "rental jacket," (ECF No. 43-3, Ex. 1), the Rental Jacket refers to itself by a similar name, "Rental Document Jacket." (ECF No. 43-3, Ex. 2 at ¶ 2 ("You agree to the terms below and on the other panels of this Rental Document Jacket.")) That reference appears in the second paragraph of the Rental Jacket, and thus would be evident to a consumer who reasonably attempts to read it. The cases offered by Plaintiff, in contrast, contain documents to be incorporated that are more opaquely referenced. *See, e.g.*, *Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d 1072, 1075 (9th Cir. 1998) (referring only to "terms and conditions" of undefined "labor agreements"); *Al-Qarqani v. Chevron Corp.*, No. C-18-03297-JSW, 2019 WL 4729467, at *4 (N.D. Cal. Sept. 24, 2019) (referring to the wrong provision, of an unattached agreement to be incorporated, that was signed 13 years earlier).

Also, while the Rental Jacket bears a different title (i.e., the "Rental Terms and Conditions") it is difficult to imagine what other document could be the Rental Jacket given the context of Plaintiff's transaction. (ECF No. 43-3, Ex. 2). After all, the consumer receives the "Rental Jacket" at "the time the Rental Agreement is executed" and the Rental Agreement clearly indicates that an accompanying document contains the terms and notices of the contract. (ECF No. 43-3 at ¶ 8; ECF No. 43-3, Ex. 1 ("I have reviewed&agreed (sic) to all notices&terms (sic) here and in the rental jacket")). The term "Rental Jacket," moreover, is intuitive in that the "Rental Jacket" is a foldable, multi-panel piece of paper that envelopes the Rental Agreement as a jacket would a person. (ECF No. 43-3, Ex. 4).

Consequently, the Court finds that the Rental Agreement does not require language as precise as that in *Lucas*, *see Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 995 (N.D. Cal. 2012) ("I have read the conditions on this Contract as set forth in the FOLDER JACKET CR001 and its addendum DCLA001, DCL002, DCLA00"), nor an express commitment that someone "explained" the "contents" of the "[c]ontract," to incorporate the Rental Jacket. *Id.* While such detail is, of course, favorable, the instant language unequivocally

8

puts the reader on notice that he is agreeing to terms both in the Rental Agreement and in the Rental Jacket.

### 2. Second *Socoloff* Factor: The Arbitration Provision Was Sufficiently Called to Plaintiff's Attention.

With respect to the second factor, Plaintiff contends that the Arbitration Provision was not "called to [his] attention" because it was "buried in prolix, fine-print" text. (ECF No. 47 at 14.) Specifically, the Arbitration Provision appears at the twenty-ninth paragraph of the Rental Jacket, a document containing thousands of words printed in small font. (*See* ECF No. 43-3, Ex. 2 at ¶ 29).

The Court finds that the Arbitration Provision was sufficiently highlighted so that someone who was reviewing the contents of the Rental Jacket would have had their attention called to the arbitration terms in a readily accessible document. Here, the plain text of the paragraph immediately adjacent to Plaintiff's signature on the Rental Agreement indicates that some of the contract's terms are to be found on another document. (ECF No. 43-3, Ex. 1 ("I have reviewed all the notices&terms (sic) here *and in the rental jacket*") (emphasis added)). And, the Arbitration Provision in the Rental Jacket is highlighted by the way in which the text is treated: the Provision is preceded by an unambiguous title ("Arbitration"); the pertinent text is underlined; and the phrase binding the Plaintiff is fully capitalized. (ECF No. 43-3, Ex. 4). Thus, while bolding the text, reducing the number of words, or increasing the font size may be more effective methods to highlight the Provision, the form of presentation in this case fairly calls attention to the Arbitration Provision. The Arbitration Provision was neither relegated to "the corner of a document (the folder jacket)," *Lucas*, 875 F. Supp. 2d at 1006, nor presented to Plaintiff "without . . . an opportunity to read or to comprehend the fine print." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1301 (9th Cir. 2006). Accordingly, the placement and presentation of the provision satisfies *Socoloff*.

/ / /

19-cv-00421-GPC-AHG

### 3. Third *Socoloff* Factor: The Rental Jacket Was Easily Available.

Lastly, Plaintiff also contends that, because the "document [was] not provide[d] to the consumer for review before executing the Rental Agreement," it is not "easily available." (ECF No. 47 at 15.) On this point Plaintiff relies largely on *Bacon v. Avis Budget Group, Inc*, 357 F. Supp. 3d 401 (D.N.J. 2018), whereas Defendant hues closely to the reasoning of *Lucas*, 875 F. Supp. 2d at 999.

Though basic contract principles would suggest that you cannot consent to an agreement you have not reviewed, Defendant is correct that California law does not require a separate, referenced document to be attached or provided at the time that the rental agreement is entered for the separate provisions to be enforced. (ECF No. 48 at 7– 8.) "[T]he current trend of California cases has been to enforce contracts even when consumers later receive the terms." *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1297 (N.D. Cal. 2018). Thus, where the contract indicates to the reader that he may be bound by the "notices" and "terms" explained in a separate document, that separate document is not excluded from the agreement merely because it is given to the party immediately after – as opposed to immediately before – he signs the agreement. *See Lucas*, 875 F. Supp. 2d at 999 (incorporating Rental Jacket because it was "easily available" even if plaintiff "did not receive it"); *see also Reilly v. WM Fin. Servs. Inc.*, 95 F. App'x 851, 852 (9th Cir. 2004) (incorporating an arbitration provision that plaintiffs "had never seen, read, or approved" because plaintiffs' signed investment account application specifically referred to the "predispute arbitration section"); *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 791 (2003), *as modified* (Aug. 27, 2003) (finding "[n]othing further was needed to bind the plaintiff a policy" where the contract "identified the Policy by name and directed the plaintiff to where he could inspect it"); *Hertz Corp. v. Home Ins. Co.*, 14 Cal. App. 4th 1071, 1075 (1993) ("when a policy contains sufficiently clear language, it matters not that the insured . . . failed to read it").

Here, renters routinely receive "a rental jacket listing all of the rental terms and conditions" at the time the Rental Agreement is executed. (ECF No. 43-3 at ¶ 8.) That Agreement, moreover, explicitly directs the Plaintiff to the "rental jacket." (ECF No. 43-3, Ex. 1 at 2.) Thus, even if Plaintiff did not review the Rental Jacket prior to signing the Rental Agreement,[3] he could have done so by simply asking for the Rental Jacket. Consequently, applying California law to these facts, the Rental Jacket was "easily available." *Lucas*, 875 F. Supp. 2d at 999.

Plaintiff's reliance on *Bacon*, moreover, is inapposite as *Bacon* applies stricter New Jersey common law. *See Bacon*, 357 F. Supp. 3d at 423 (assessing whether the renter was "able to identify beyond doubt the document that is referred to, and to ascertain the contents of the relevant terms"). And, in the event this Court were to consider non-California precedents, the weight of those decisions is decidedly in favor of incorporating rental jackets. *See, e.g.*, *Oden v. Vanguard Car Rental USA, Inc.*, No. 2:07-CV-261, 2008 WL 901325, at *3 n.1 (E.D. Tex. Mar. 31, 2008) (incorporating Rental Jacket that plaintiff received after signing the Rental Agreement); *Arch Ins. Co. v. Nakama*, No. CV-S-031236-RLH, 2005 WL 8162180, at *3 (D. Nev. Aug. 1, 2005) (same); *Craster v. Thrifty Rent-A-Car Sys., Inc.*, 187 S.W.3d 33, 39 (Tenn. Ct. App. 2005) (incorporating where plaintiff never saw or read Jacket).

In light of the three *Socoloff* factors, the Court finds that Rental Agreement's language is sufficient to "guide the reader to the incorporated Rental Jacket." *St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*, No. 12-CV-05952-LHK, 2014 WL 2120347, at *9 (N.D. Cal. May 21, 2014) (quoting *Shaw*, 58 Cal. App. 4th at 54).

/ / /

/ / /

---

[3] Here, the facts do not clearly state whether Plaintiff received the Rental Jacket before or after singing the Rental Agreement. (*See* ECF No. 50 at 18.)

**B. The Arbitration Provision is <u>Not</u> Void Under California Public Policy**

**Where It Permits Arbitration of Claims Seeking Public Injunctive Relief.**

Next, the parties dispute whether the Rental Agreement precludes the consumer from seeking public injunctive relief in any forum, including arbitration. (*Compare* ECF No. 43-1 at 11–14 *with* ECF No. 47 at 16–21). Plaintiff contends that, if the Rental Agreement precludes such relief, it is invalid under California Law. (*See* ECF No. 47 at 21–22.) Consequently, Plaintiff need not arbitrate his claims as the Rental Agreement's severance clause relieves the Parties from arbitration where the class-action waiver "is deemed invalid or unenforceable." (ECF No. 43-3, Ex. 2 at ¶ 29.) Defendant contends that the Arbitration Provision does not violate California public policy because it does not foreclose any claim for public injunctive relief; it merely shoehorns all such claims to arbitration, as is permissible under California law. (ECF No. 48 at 6–9.)

Given these positions, the Court must determine (i) if Plaintiff seeks public injunctive relief, and (ii) whether that relief is permitted in any forum under the Rental Agreement.[4] The Court finds that Plaintiff seeks public injunctive relief, ad that the Rental Agreement permits Plaintiff to obtain that relief in arbitration.

**1.       Plaintiff seeks Public Injunctive Relief.**

Public injunctive relief "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017); *see also Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1082 (1999). Such relief "by and large benefits the general public . . . and that benefits the plaintiff, if at all, only incidentally and/or as a member of the general public." *McGill*, 2 Cal. 5th at 955 (citations and quotations omitted); *see also Eiess v. USAA Fed.*

---

[4] Before discussing the applicability of *McGill*, most courts first address whether "plaintiff was actually seeking public injunctive relief." *See Sponheim v. Citibank, N.A.*, No. SA-CV-19264-JVS, 2019 WL 2498938, at *5 (C.D. Cal. June 10, 2019) (collecting cases).

*Sav. Bank*, 404 F. Supp. 3d 1240, 1258 (N.D. Cal. 2019) (finding that plaintiff sought public injunctive relief by seeking to "enjoin [Defendant] from future violations of California consumer protection statutes"). In contrast, private injunctive relief "resolves a private dispute between parties" and "rectifies individual wrongs." *McGill*, 2 Cal. 5th at 955 (citations and quotations omitted); *see McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 858 (S.D. Cal. 2019) (finding relief "would primarily benefit only" the Class members who incurred fees and not the general public); *Wright v. Sirius XM Radio Inc.*, No. SA-CV-1601688-JVS, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017) (finding that Plaintiff's requested relief only benefited Class members was too vague to more than "incidental[ly]" benefit the public).

Here, Plaintiff seeks injunctive relief pursuant to his three claims under article I, section 1, of the California Constitution, California's Rental Passenger Vehicle Transactions Law, and the UCL.[5] (ECF No. 47 at 18.). Specifically, Plaintiff seeks injunctive relief to stop Defendant from allegedly "exposing personal information," to "alert consumers to the risk to their personal data uploaded to the Defendant's infotainment systems and to remove said personal data from rental cars immediately upon their return to Defendant." (ECF No. 38 at ¶¶ 7, 69, 81, 93, 96–97.) This relief falls squarely within the province of public injunctive relief.

Plaintiff's requested relief would primarily benefit the California public and not Plaintiff or the Class. Contrary to Defendant's assertion that Plaintiff's relief is applicable to only "a limited class of people—individuals who rented cars from Avis subsidiaries

---

[5] Defendant offers in reply that Plaintiff lacks standing to bring a UCL claim. (ECF No. 48 at 12 n.3.) Standing is a jurisdictional issue without which the Court cannot hear this case. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). At this stage, the Court is satisfied that Plaintiff has standing in that Defendant's alleged deprivation of his private information amounts to an "injury-in-fact." *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019). Plaintiff allegations, moreover, amount to an "invasion" of his rights under the California Constitution and the Rental Passenger Vehicle Transactions Law. *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).

13

over a defined period of time," (ECF No. 43-1 at 14), Plaintiff's requested injunction would impact all Californians who rent cars from Defendant, a figure that Plaintiff estimates includes 6.5 million California residents. (*See* ECF No. 38 at ¶ 97; ECF No. 1 at 5.). As Plaintiff notes, that accounts for approximately "one quarter of California's eligible drivers." (ECF No. 47 at 23.) Thus, if Plaintiff's sought-after injunction were granted, Defendants would need to implement policies to protect the millions of California drivers who inadvertently and allegedly put their privacy at risk by connecting their mobile devices to Defendants' rental cars. Plaintiff's injunction, moreover, is forward looking and would benefit future rental drivers not included in the Class. Accordingly, while Plaintiff may seek damages and other benefits which will accrue to himself and the Class if he succeeds in this litigation, the impact of Plaintiff's requested relief goes far beyond the Class and will benefit the public. *See Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (quoting *McGill*, 2 Cal. 5th at 955) (noting that injunctions benefit "the public directly by the elimination of deceptive practices").

### 2.    The Agreement Permits Plaintiff to Arbitrate his Claims for Public Injunctive Relief.

The California Supreme Court's recent decision in *McGill* clarified that "a provision in *any* contract—even a contract that has no arbitration provision—that purports to waive, *in all fora*, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *McGill*, 2 Cal. 5th at 962 (emphasis in original). However, the "*McGill* rule leaves undisturbed an agreement that both requires bilateral arbitration and permits public injunctive claims." *Blair*, 928 F.3d at 829. Consequently, the next question to address is whether the Rental Agreement and Rental Jacket bar Plaintiff from seeking public injunctive relief in arbitration, as was the case in *Blair*.

In *Blair*, the Ninth Circuit struck down an Arbitration Provision containing two limits: (1) a prohibition on the arbitrator from awarding "relief that would affect [people]

14

other than [the plaintiff]," and (2) a prohibition on "arbitrat[ing] as a Class, collective, mass, private attorney general, or *representative* action." *Blair*, 928 F.3d at 831 (emphasis added). The *Blair* court found that these prohibitions together "preclude[d] the arbitrator from awarding public injunctive relief," and thus violated California public policy. *Id.*

Plaintiff argues that the Arbitration Provision in the Avis contract is no different. The Arbitration Provision states, "YOU AND AVIS AGREE THAT ANY SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED, OR *REPRESENTATIVE* ACTION." (ECF No. 43-3, Ex. 2 at ¶ 29) (italicized emphasis added). This language is plainly similar to that in *Blair* insofar as it also prohibits "representative" actions. (ECF No. 47 at 16.) However, as Defendant points out, the *Blair* and Avis contracts differ in that here the arbitrator is not expressly forbidden from awarding relief to people other than the Parties in arbitration. (ECF No. 48 at 13.) In other words, the instant Arbitration Provision has one – but not both – of the prohibitions found to be dispositive in *Blair*. *Blair*, 928 F.3d at 831.

Hence, this determination of public policy turns on whether a prohibition on "representative" actions necessarily bars an award of public injunctive relief. The Court finds that it does not. "A plaintiff requesting a public injunction files the suit 'on his or her own behalf' and retains sole control over the suit." *Blair*, 928 F.3d at 829 (citing *McGill*, 2 Cal. 5th at 945). Hence, while successful claims for public injunctive relief result in benefits to people other than the plaintiff, they are not actions in which the plaintiff is literally acting on someone else's behalf (i.e., representing someone). *See* Action Definition, *Black's Law Dictionary* (11th ed. 2019) (referring the reader only to class actions or derivative actions, such as a suit from a corporate fiduciary or partner's action for loss of consortium, in defining a "representative action"); Representative Definition, *Black's Law Dictionary* (11th ed. 2019) ("Someone who stands for or acts on behalf of another.") This is part of what makes claims seeking public injunctive relief

different from, for example, representative claims under the California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698 *et seq*. *See Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014) (treating PAGA claims as "representative").

Additional support for this distinction is found in cases where courts have invalidated arbitration provisions on public policy grounds based upon contractual language prohibiting an arbitrator from awarding any relief to people other than the parties. *See McArdle v. AT&T Mobility LLC*, No. 09-CV-01117-CW, 2017 WL 4354998, at *1, 4 (N.D. Cal. Oct. 2, 2017), *aff'd*, 772 F. App'x 575 (9th Cir. 2019) (striking an Arbitration Provision which both limits the arbitrator's award to the plaintiff *and* precludes arbitrating "representative" actions); *Eiess*, 404 F. Supp. 3d at 1246 (noting that a clause stating that the "arbitrator may not award injunctive or declaratory relief for the benefit of others who are not named parties to the arbitration proceedings" was against public policy).[6]

In view of the foregoing, the Court finds that Plaintiff's TAC plainly seeks public injunctive relief and that the Arbitration Provision permits Plaintiff to pursue such relief in arbitration. *Blair*, 928 F.3d at 829; *McGill*, 2 Cal. 5th at 945. Hence, the Arbitration Provision is not invalid as against California public policy.

---

[6] Plaintiff points to *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-CV-02033-AJB, 2019 WL 4747667, at *4 (S.D. Cal. Sept. 30, 2019), for the proposition that "once a court determines that the arbitration agreement bars public injunctive relief, *McGill* applies and renders that provision of the arbitration agreement unenforceable . . ." (ECF No. 47 at 18.) And, while that is true, *Lotsoff* does not compel the Court to find the instant Arbitration Provision bars claims seeking public injunctive relief altogether as the *Lotsoff* court addressed materially different contractual language. In *Lotsoff*, the court considered a provision barring the plaintiff from "join[ing] or consolidate[ing] disputes . . . *in the interests of the general public*." *Lotsoff*, 2019 WL 4747667, at *4 (emphasis added). This language plausibly encompasses claims seeking public injunctive relief. *See McGill*, 2 Cal. 5th at 951 (noting that public injunctive relief "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public"). In contrast, the language Plaintiff points to here as encompassing actions seeking public injunctive relief – namely, "representative" actions and conducting arbitration "on an individual basis" – do not. (ECF No. 50 at 13.) As a result, *Lotsoff* is distinguishable.

### C. The Arbitration Agreement is Not Unconscionable with Respect to the Rental Passenger Vehicle Transactions Law.

"In order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability." *See Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). These two elements, however, need not both be present to the same degree. *See Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981 (9th Cir. 2007). "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114.

Here, the Court finds the contract has some procedural defects. "Procedural unconscionability involves 'oppression' or 'surprise' due to unequal bargaining power." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (citation omitted). As Plaintiff notes, adhesion contracts are "procedurally unconscionable to at least some degree" on the basis that the "party of lesser bargaining power" necessarily suffers from some oppression. *Id.* And, certainly, car rental agreements can be considered adhesion contracts. *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 477 (2015) (Ginsburg, J., dissenting) (quoting Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 323 (2013) (noting that, as a result of *Concepcion*, "powerful economic entities can impose no-class-action-arbitration clauses on people with little or no bargaining position – through adhesion contracts involving securities accounts, credit cards, mobile phones, *car rentals*, and many other social amenities and necessities") (emphasis added). The Arbitration Provision, moreover, creates some surprise by using "exceedingly small print" and containing "several thousand words." *Lucas*, 875 F. Supp. 2d at 1006.

17

However, at the same time, and as discussed above, the Arbitration Provision itself is not hidden or set off in a "corner" of the Rental Jacket. *Id.* Instead, the layout of the Rental Jacket calls attention to the Arbitration Provision by introducing it with the bolded word "arbitration," separating it out with paragraph numbers, underlining it, and even capitalizing the binding class-action waiver. (*See* ECF No. 43-3, Ex. 1 at ¶ 29.) Taking these facts together, the Court finds that the Rental Jacket is not likely to surprise a consumer who reads it at the time of rental and thus the procedural unconscionability is only moderate.

The Arbitration Provision and Rental Agreement, moreover, are not substantively unconscionable. Plaintiff argues that compelling arbitration, if that were required, would deprive him of "the unwaiveable right to file an 'action' in a court of justice." (ECF No. 47 at 18.) Plaintiff asserts that the Rental Passenger Vehicle Transactions Law, under which his second cause of action arises, guarantees that right in stating that a car renter may "bring an action against a rental company for the recovery of damages and appropriate equitable relief for a violation of this chapter, except for Sections 1939.21, 1939.35, and 1939.37." (ECF No. 47 at 26–27) (citing Cal Civ. Code § 1939.25). Thus, Plaintiff argues that because an arbitration is not "an action" within the meaning of California law, the Rental Agreement must be unconscionable if it would preclude Plaintiff from keeping his claims in federal court. (*Id.*); *see* Cal. Civ. Code § 3513 ("[A] law established for a public reason cannot be contravened by a private agreement.").

Plaintiff's interpretation of the Rental Passenger Vehicle Transactions Law, however, is foreclosed by the FAA. As the Supreme Court noted in *Concepcion*, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (citation omitted). In arriving at this conclusion, the Supreme Court reasoned that the FAA declares "a national policy favoring arbitration" which "forecloses state legislative attempts to undercut the enforceability of

18

arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). Consequently, Plaintiff's argument on substantive unconscionability fails under *Concepcion*.

In sum, because "there must be both a procedural and substantive element of unconscionability" to render a contract invalid, *Ferguson*, 298 F.3d at 783, and because *Concepcion* forecloses Plaintiff's argument as to substantive unconscionability, the Court finds the Arbitration Provision is not unconscionable.

## IV. Plaintiff's Claims Are Excluded from Arbitration Under the Agreement's Carve Out Provision.

Having found that a valid agreement to arbitrate exists between the Parties, the Court next takes up its second duty on a motion to compel arbitration: determining "whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 955–56 (9th Cir. 2012) (quotations omitted).

### A. Legal Standard for Interpreting Scope of Contract.

In determining "whether the agreement encompasses the dispute at issue," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564–65 (9th Cir. 2014), courts must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals . . ." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"). Courts evaluate the contract's language "in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (citing Cal Civ Code § 1638). Courts must interpret the contract to ensure that the "whole of a contract is . . . taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

"Where an agreement to arbitrate exists, the party seeking to compel arbitration must demonstrate that the arbitration agreement encompasses the dispute at issue." *Perez*

19

*v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1342 (C.D. Cal. 2017), *aff'd sub nom. Perez v. DirecTV, LLC*, 740 F. App'x 560 (9th Cir. 2018) (citing *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Ultimately, if an ambiguity as to the scope of a contract cannot be resolved, a court should interpret the agreement in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quotation omitted). "Of course, the fact that a word carries multiple meanings does not by itself render it ambiguous." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 868 (1993).

### B. Analysis.

The Rental Agreement provides in pertinent part: "all disputes between you and Avis arising out of, relating to or in connection with your rental of a vehicle … shall be exclusively settled through binding arbitration." (ECF No. 43-3, Ex. 1 at ¶ 29). Defendant submits that the Arbitration Provision encompasses the instant dispute. (ECF No. 43-1 at 13.) Relying on a "personal injury" exception, Plaintiff argues that the Rental Agreement expressly excludes the instant dispute from arbitration. (ECF No. 47 at 26–27.)

Specifically, Plaintiff contends that the term "personal injury," which appears in a caveat[7] at the end of the Arbitration Provision, encompasses and excludes from arbitration any claims alleging a violation of Plaintiff's right to privacy. (ECF No. 47 at 27.) Defendant maintains that Plaintiff's reading is "tortured at best" and that the term only applies to "physical bodily harm." (ECF No. 48 at 15–16.) For the following reasons, the Court finds that the caveat unambiguously encompasses and excludes from arbitration Plaintiff's claims for invasion of privacy.

/ / /

---

[7] The relevant section of the Arbitration Provision states in full: "Disputes and claims that are within the scope of a small claims court's authority, as well as disputes and claims regarding personal injury and/or damage to or loss of a vehicle related to your Avis [Budget] rental, are exempt from the foregoing dispute resolution provision." (ECF No. 43-3, Ex. 1 at ¶ 29.)

### 1. The Common Meaning of "Personal Injury."

When interpreting a statute, the Court's first step is to scrutinize the words of the contract as "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. That language, moreover will, "be understood in [its] ordinary and popular sense, rather than according to [its] strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to [it] by usage, in which case the latter must be followed." Cal. Civil Code § 1644.

Because the Rental Agreement fails to define "personal injury," the Court begins its analysis by ascertaining the term "personal injury" in its "ordinary and popular sense."[8] Defendant asserts that a layperson would understand "personal injury" to mean "injury to one's person" (i.e., "physical bodily harm.") (ECF No. 50 at 13; ECF No. 48 at 16.) The term personal injury, however, is commonly understood to mean more than "injury to one's person," as is evident from, among other things, its dictionary definitions. *Revitch v. DirecTV, LLC*, No. 18-CV-01127-JCS, 2018 WL 4030550, at *10 (N.D. Cal. Aug. 23, 2018) (deriving a term's "common[]" understanding by reference to Black's law dictionary); *In re Lusk*, 589 B.R. 678, 686 (Bankr. E.D. Cal. 2018) (noting that "Black's Law Dictionary qualifies as a general dictionary for purposes of contract interpretation" in California).

Black's Law Dictionary offers three definitions of the term "personal injury,"

1. In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury. — Also termed bodily injury.
2. Any invasion of a personal right, including mental suffering and false imprisonment. — Also termed private injury.

---

[8] In addition to a lack of a definition in the agreement, Defendant has not offered any technical definition of "personal injury" that was contemplated by the Parties.

3. For purposes of workers' compensation, any harm (including a worsened preexisting condition) that arises in the scope of employment.

Injury Definition, *Black's Law Dictionary* (11th ed. 2019). By defining the term broadly to include "*[a]ny* invasion of a personal right," *id.* (emphasis added), the second definition comfortably encompasses the claims at issue here, which allege a deprivation of Plaintiff's right to privacy. (ECF No. 38 at ¶ 67 ("By the acts, transactions, and courses of conduct alleged herein, Defendant has violated the Class members' inalienable right to privacy . . ."). At a minimum, the dictionary definition demonstrates that Plaintiff's definition is not tortured nor an absurdity, and that the only question is whether the term is unambiguous. The mere fact that the term "personal injury" carries multiple dictionary meanings, moreover, does not by itself render it ambiguous. *See Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th at 868 ("Multiple or broad meanings do not necessarily create ambiguity.")

As to "the meaning a layperson would ordinarily attach" to this language, defense counsel argued at the motion hearing that a person renting a car would not have viewed privacy-related injuries as a "personal injury." (ECF No. 50.) While this may have been true a decade ago, this argument ignores the current state of technology in car design. These technological advances are recognized in the Rental Agreement, itself, within the provisions that specifically address privacy rights implicated by the rental of vehicles that are equipped with GPS Tracking Devices and the OnStar System. (ECF No. 43-3, Ex. 2 at ¶¶ 30–31.) Further, defendant's position ignores the near ubiquity of electronic devices in vehicles, including those rented by Avis, which already provides proprietary offerings to connect with their tech-savvy consumers on their smartphones more easily. *See* Avis Budget Group, 2016 Annual Report: Efficiency through Innovation and Technology at 4 (March 21, 2017), available at http://ir.avisbudgetgroup.com/static-files/bd4dc659-5014-4a7a-ba79-d6c5d207f498 (describing Avis Budget Group's "[l]ong history of innovation in the vehicle rental and car sharing business," including the 2015

22

launch of (1) *Avis Now*, a "mobile app-enabled rental process" accessible via smartphone or tablet, (2) an Android application to use voice-activated technology for reservations, and (3) "an application for Apple Watch").

The above illustrate that a lay person would not have limited the meaning of personal injury to bodily injury and would reasonably have understood "personal injury" to include a violation of the right of privacy. (ECF No. 50.) The instant Rental Agreement was one in which both Parties – or, at a minimum, Defendant who drafted the contract – were aware of the likelihood of an invasion of the right to privacy and unambiguously intended to include it within the "personal injury" carve out provision.

### 2. "Personal Injury" Read in Context.

In addition to assessing a term's free-standing meaning, the Court must refer to the contract as a whole for context. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999); *Taranow v. Brokstein*, 135 Cal. App. 3d 662, 667 (Ct. App. 1982). The "whole of a contract" must be interpreted "to give effect to every part, if reasonably practicable, [with] each clause helping to interpret the other." Cal. Civ. Code § 1641.

As to context, Defendant argues that the term "personal injury" could mean only "bodily injury" because the term is used within the phrase "claims regarding personal injury and/or damage to or loss of a vehicle related to your Avis rental." (ECF No. 48 at 15–16.) Defendant adds that this reading best comports with the circumstances involving likely injuries during a vehicle rental, such as a broken leg or damage to the car. (ECF No. 50 at 9–10). Plaintiff contends, instead, that this language is broader, and that placing "personal injury" alongside "damage to or loss of a vehicle" merely shows that "personal injury" does not include damage to property. (ECF No. 50 at 21 ("Property injury is distinct from personal injury."))

More salient than these arguments is Defendant's use of the term "bodily injury" in the liability insurance provision of the Rental Agreement, which shows that Defendant understood that there was a difference between "bodily injury" and "personal injury" at

23

the time the contract was drafted. In the Additional Liability Insurance (ALI) section, the Rental Jacket states that ALI coverage can be provided in a variable range "depending on the jurisdiction of rental for *bodily injury*, death or property damage for each accident," and that "ALI does not apply to liability for *bodily injury* or property damage arising out of any 'prohibited use of the car . . .'" (ECF No. 43-3, Ex. 2 at ¶ 23) (emphasis added). Because the Rental Jacket uses the term "bodily injury" elsewhere, it would seem that the Parties mutually intended for the term "personal injury" as used in the Arbitration Provision to mean something different. *See Palmer*, 21 Cal. 4th at 1115 ("the mutual intention of the parties at the time the contract is formed governs interpretation"). And given that "bodily injury" makes up a subset of the definition for "personal injury," it stands to reason that "personal injury" has a broader reach and would cover an invasion of the right to privacy.

Ultimately, Defendant chose to resolve disputes through arbitration with a carve out for claims regarding "personal injury." Defendant was free to define "personal injury" and to limit it to bodily injury, but it did not. Taking these factors into account, the Court finds that context of the Rental Agreement supports Plaintiff's arguments.

### 3.    CA Law Favors Plaintiff's Interpretation of "Personal Injury"

Finally, Plaintiff's interpretation finds support under California law. Various California courts have referred to privacy-based causes of action as actions for "personal injury." *See, e.g.*, O*perating Engineers Local 3 v. Johnson*, 110 Cal. App. 4th 180, 187 (2003) ("the nature of the harm from the breach of the right to privacy does constitute a personal injury . . ."); *Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463, 1485 (Ct. App. 1986) ("nature of the harm from the breach of the right to privacy [] constitutes a personal injury"); *Shulman v. Lachtchouk*, No. B-224087, 2011 WL 522476, at *5 (Cal. Ct. App. Feb. 16, 2011), review denied (May 11, 2011) (treating invasion of privacy cause of action as a personal injury cause of action in an appeal from a damage award in a default judgment); *Cain v. State Farm Mut. Auto. Ins. Co.*, 62 Cal. App. 3d 310, 313

(Ct. App. 1976) (applying accrual of action rules for "personal injury" causes of action to invasion of privacy actions).

In contrast to these precedents, Defendant relies on *Sarver v. Chartier*, where the Ninth Circuit observed that "the Second Restatement [of Conflict of Laws] expressly excludes 'injuries to a person's reputation' and 'the violation of a person's right of privacy' from those injuries classified as 'personal injuries.'" *Sarver v. Chartier*, 813 F.3d 891, 898 n.3 (9th Cir. 2016) (*quoting* Restatement (Second) of Conflict of Laws § 146 cmt.b (1971)). Defendant points to *Sarver* to support its argument that "'personal injury' is not commonly understood to include privacy-related claims." (ECF No. 51 at 2). Defendant's superficial reading of *Sarver* ignores the context of the case and the limited impact of its holding here.

Ultimately, *Sarver* is based upon technical conflict-of-laws rules which permit a court to identify the state that has the greatest interest in having its laws applied to particular types of cases. Addressing actions for personal injury, the Restatement (Second) of Conflict of Laws § 146 carefully refines the meaning of "personal injury" by stating that "the violation of a person's right to privacy [] are not 'personal injuries' *in the sense here used*." Restatement (Second) of Conflict of Laws § 146 cmt.b (1971) (emphasis added). With this phrase, the Restatement Second implicitly recognizes that it has constrained the use of "personal injury" in a way that is contrary to how the term is otherwise understood. This phrase, moreover, is calculated to facilitate a proper assessment of the factors entailed in a conflict-of-laws analysis by courts applying the Restatement, including the contacts between the parties, the offending conduct, and the place of injury. Consequently, outside of a conflicts-of-law analysis, *Sarver* and the Restatement carry little weight. *Sarver* is further distinguishable in that it did not involve the interpretation of the term "personal injury" in the context of a contract. And, S*arver* provides no insight as to a layman's understanding of the term "personal injury" because the decision rests on the technical, legal issue of conflict-of-laws.

Ultimately, the Court finds that the ordinary meaning of "personal injury" read in context of the entire contract and in light of California jurisprudence favors Plaintiff's position that the instant Arbitration Provision's caveat for personal injuries unambiguously encompasses privacy-based claims like those raised in the TAC.[9]

## V. Conclusion

For the foregoing reasons, the Court finds that the Rental Agreement is a valid arbitration agreement, but that Plaintiff's claims for invasion of privacy are excluded from arbitration under the Rental Agreement's carve out provision. Accordingly, the Court **DENIES** Defendant's motion to compel arbitration.

**IT IS SO ORDERED.**

Dated:  March 26, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[9] The Court further notes that Plaintiff's position is also supported by *Netscape*, wherein the Ninth Circuit found that claims against America Online for intercepting and internally disseminating private online communications violated plaintiff's privacy and were "personal injury offenses" within the policy's coverage. *Netscape Commc'ns Corp. v. Fed. Ins. Co.*, 343 F. App'x 271, 272 (9th Cir. 2009). *Netscape*, however, is an insurance case, and as such benefits from the "highly specialized sense" in which insurance contracts use the term "personal injury," *see Albert v. Truck Ins. Exch.*, 23 Cal. App. 5th 367, 377 (Ct. App. 2018), *review denied* (Aug. 22, 2018) (quoting *Stonelight Tile, Inc. v. California Ins. Guarantee Assn.*, 150 Cal. App. 4th 19, 38 (2007)), including that insurance "coverage provisions are broadly construed." *Netscape*, 343 F. App'x at 272 (quoting *AIU Ins. Co. v. Super. Ct.*, 799 P.2d 1253, 1264 (1990)). To avoid confusing the instant issue with the norms governing the interpretation of insurance contracts, the Court declines to rely on *Netscape*, or any other insurance matter, for its ruling that the term "personal injury" here encompasses privacy-based claims.

26