UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KENT GREENLEY, *individually and on behalf of all others similar situated,*<br><br>Plaintiff,<br><br>v.<br><br>AVIS BUDGET GROUP INC., *a Delaware and New Jersey corporation*<br><br>Defendant. | Case No.: 19-CV-00421-GPC-AHG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND REMANDING THE ACTION TO STATE COURT.**<br><br>**(ECF No. 56.)** |

Before the Court is Defendant Avis Budget Group, Inc.'s ("Defendant") motion to dismiss Plaintiff David Kent Greenley's ("Plaintiff") Third Amended Complaint ("TAC"). (ECF Nos. 38, 56.) Plaintiff alleges, in sum, that Defendant's collection and storage of Plaintiff's private information vis-à-vis the pairing of Plaintiff's mobile phone to Defendant's rental vehicle violates (1) the California Constitution, (2) California's Rental Passenger Vehicle Transactions Law ("RPVTL"), and (3) California's Unfair Competition Law ("UCL"). (ECF No. 38.) Defendant moves to dismiss the TAC asserting that Plaintiff lacks Article III standing to proceed and has, otherwise, failed to allege sufficient facts to support his three causes of action. (ECF No. 56.)

Finding that Plaintiff lacks Article III standing, the Court **GRANTS** the motion as to all three causes of action and **REMANDS** this action to state court.

## I.     Background

### A.     Allegations in the Third Amended Complaint ("TAC")

Plaintiff alleges that Defendant failed to promulgate or maintain adequate policies and procedures to safeguard class members who rented a vehicle from Avis Rent a Car, Budget Rent a Car, and Payless Car Rental on a short-term basis between December 31, 2014 and the present. (ECF No. 38, TAC at ¶ 1.) Plaintiff alleges that Defendant collected renters' information when they paired their smartphones or mobile devices with the vehicles' GPS technology and/or automotive infotainment systems (collectively, the "Rental Technology"). (*Id.*) An infotainment system is "hardware and software in a vehicle that provides a combination of entertainment, communications, and information content to the driver or passengers." (TAC at ¶ n.1.)

Pairing is the process of connecting a device to the Rental Technology, which usually occurs by USB cables and/or Bluetooth technologies. (TAC at ¶ 25.) A paired device gains access to the various telephone, data, and multimedia functions of the Rental Technology, including the ability to automatically transfer calls between the device and the vehicle, and to download or upload preferences, contacts, calendar data, and other content from the Device. (TAC at ¶¶ 24, 27.) A renter with a paired device can also issue voice commands to make calls, play music, and operate the Rental Technology in other ways. (TAC at ¶ 28.) Once paired by Bluetooth technologies, the renter's device connects with the Rental Technology every time it enters the vehicle. (TAC at ¶ 26.)

Plaintiff asserts that, once paired, the rented vehicle can collect, copy, and/or transfer information from the device to the Rental Technology. (TAC at ¶ 29.) That information (collectively, the "Private Data") includes (1) GPS history of past locations and points of interest; (2) device name / phone identifier; (3) personal information (including home address, if available); (4) contacts and address book; (5) calendar

entries; (6) Internet search history and web browsing data; (7) call log or text/data messages if the consumer uses hands-free calling or texting; (8) other personal communications including email and social networking communications; (9) application log-in information, including music streaming login (such as Spotify or Pandora); (10) choice of music, radio, and other streamed audio or video content; and/or (11) Wi-Fi identifiers. (TAC at ¶ 3.)

The Private Data then remains continuously stored on the Rental Technology unless purged through a manual deletion (often referred to as a "factory reset"). (TAC at ¶ 30.) Plaintiff alleges that Defendant refuses to conduct routine deletion of a renter's Private Data when a vehicle is returned. (TAC at ¶ 4.) This creates the risk that any collected Private Data will remain on the vehicle and thus become accessible to subsequent renters of that vehicle, including potential identity thieves. (TAC at ¶¶ 5, 36.)

Plaintiff alleges that Defendant does not adequately disclose that the Rental Technology will collect and indefinitely store Private Data if a device is paired. (TAC at ¶ 6.) Defendant has allegedly "failed to provide explicit notice/disclosure to consumers" of its collection and storage practices, or offered only unclear warnings, including by burying them in "small print." (TAC at ¶ 31.) Plaintiff also alleges that Defendant "failed to promulgate or otherwise maintain responsible policies," including the absence of any "mandatory routine data clearing/deletion of Private Data." (TAC at ¶¶ 32, 33.)

Plaintiff further alleges that Defendant's inaction here "is inconsistent with Defendant's other policies and procedures providing for routine physical maintenance (e.g., refueling, vacuuming, and washing)" after a vehicle is returned. (TAC at ¶ 34.) Rather, Defendant has allegedly taken the position that it is the consumer's responsibility to remove their Private Data. (TAC at ¶ 35.) Plaintiff alleges that Defendant has thus created "substantial privacy risks" as to renters' Private Data. (TAC at ¶ 37.)

Lastly, Plaintiff makes additional allegations that are specific to his interactions with Defendant and which reflect the above-discussed conduct. Plaintiff alleges that he

regularly rents vehicles from Defendant. (TAC at ¶¶ 8–11.) He paired his device with multiple rented vehicles during the alleged time period. (TAC at ¶ 12.) Thus, the Rental Technology collected and stored Plaintiff's Private Data. (TAC at ¶ 13.) Plaintiff alleges on information and belief that Defendant has not deleted his information from the rental vehicles to date. (TAC at ¶¶ 14–15.) Plaintiff also makes a number of class-related allegations not at issue here. (TAC at ¶¶ 39–55.)

### B. Plaintiff's Three Causes of Action

#### 1. Violation of Article I, Section 1, of the California Constitution

Plaintiff alleges that the class members have a legally protected interest in the Private Data. (TAC at ¶ 62.) Class members, moreover, "reasonably expected that their Private Data . . . would be kept private after they had returned their rental vehicles to Defendant." (TAC at ¶ 63.) Thus, Plaintiff alleges that Defendant has committed a serious invasion of the Class's privacy interests by, among other conduct, not deleting their Private Data from returned vehicles, as this is "an egregious breach of the social norms underlying the Class members' right to privacy." (TAC at 64.)

Plaintiff also asserts that there are feasible "privacy safeguards for that Private Data" but "Defendant's implementation of those safeguards is slipshod or nonexistent." (TAC at ¶ 65.) Plaintiff alleges that Defendant could "easily" delete the Private Data during "routine maintenance" and that Defendant could accomplish its business objectives by alternative means having little or no impact on privacy interests. (TAC at ¶¶ 65, 66.) By failing to do so, Defendant has allegedly violated Plaintiff's right to privacy, caused "emotional distress damages," and been "unjustly enriched." (TAC at ¶¶ 68.) Plaintiff seeks "injunctive relief, damages (including but not limited to consequential damages and out-of-pocket costs of identity theft insurance and credit monitoring), equitable monetary relief, and reasonable attorney's fees and costs." (TAC at ¶ 69.)

/ / /

/ / /

### 2. Violation of the RPVTL

Plaintiff alleges that Defendant obtained the Class members' Private Data in violation of Cal. Civ. Code § 1939.23. (TAC ¶ 76.) This statute provides that a "rental company shall not use access or obtain any information relating to the renter's use of the rental vehicle that was obtained using electronic surveillance technology . . ." (TAC at ¶ 75.) Plaintiff alleges that the Rental Technology is electronic surveillance technology under the RPVTL because it is a technological method or system used to observe, monitor, or collect information, including GPS location information. (TAC at ¶ 74.) Plaintiff further alleges that the Private Data amounts to information relating to the renter's use of the rental vehicle. (TAC at ¶ 76.)

As to his injury, Plaintiff again alleges personal injury, emotional distress, and unjust enrichment. (TAC at ¶ 79.) For this, Plaintiff seeks injunctive relief, damages, equitable monetary relief, and reasonable attorneys' fees and costs. (TAC at ¶ 81.)

### 3. Violation of the UCL

Plaintiff alleges two types of UCL violations. First, Plaintiff alleges that Defendant's conduct is "unlawful" because it violates the California Constitution and the RPVTL. (TAC at ¶ 87.) Second, he alleges Defendant has acted "unfair[ly]," including by "engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the member of the Class;" "engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the member of the Class;" and "engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws . . ." (TAC at ¶¶ 86, 88.) Plaintiff adds that a competing rental company (Thrifty) abides by "more responsible policies and procedures, which shows it is feasible for Defendant to do so." (TAC at ¶ 89.) Thus, Defendant has an "unfair competitive advantage" in the marketplace because it can charge rental rates consistent with competitors while refusing to invest in appropriate practices regarding renters' Private Data. (TAC at ¶ 90.)

Plaintiff alleges that Defendant's conduct has "cause[d] Plaintiff and [the Class] to suffer injury in fact and to lose money or property." (TAC at ¶ 92.) Consequently, Plaintiff seeks an injunction against Defendant's alleged unfair and unlawful practices, including to "alert consumers to the risk [that] their personal data [will be] uploaded to the Defendant's infotainment systems" and to remove the data upon return. (TAC at ¶ 93.) Plaintiff seeks disgorgement, restitution, and an order for payment of credit monitoring services and identity theft insurance. (TAC at ¶¶ 94, 95.) Lastly, Plaintiff also seeks public injunctive relief, and notes that Defendant has already identified 6.5 million California residents for purposes of the Class. (TAC at ¶¶ 96, 97.)

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A defendant may attack a plaintiff's assertion of jurisdiction by moving to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also* 5B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1350 (3d ed. 2004) ("A motion to dismiss an action under Federal Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it.")

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Where defendants make a facial attack, a court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). A court addressing a facial attack confines its inquiry to the complaint. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242).

**III.  Analysis**

    **A.  Standing**

        **1.  Injury-in-Fact**

Defendant argues that Plaintiff has failed to allege "injury-in-fact" to support Article III standing because Plaintiff's injury is not "concrete." (*See* ECF No. 56-1 at 9–10; ECF No. 59 at 8–9.) Plaintiff responds that Article I, Section 1 of the California Constitution creates a substantive right of privacy and that Defendant's invasion of that right provides for a sufficiently concrete harm to create Article III standing. (ECF No. 58 at 11–12.)[1] Given the allegations in the TAC and the applicable law, Defendant is correct.

To establish Article III standing, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) (2020) (quoting *Lujan*, 504 U.S. at 561). Where the plaintiff alleges an "intangible harm" that is linked to a constitutional violation, the Court assesses the adequacy of the injury-in-fact by looking to "both history and the judgment

---

[1] Plaintiff does not base his claim of Article III standing on the RPVTL or the UCL. As such, the Court has not analyzed standing through the lenses of either the RPVTL or UCL. In addition, Plaintiff asserts that the Court has already recognized Article III standing under the California Constitution Article I, section 1. However, such observation was dicta given that it was made in an order denying Defendant's motion for arbitration and responded to Defendant's argument raised in reply that Plaintiff lacked standing to bring a UCL claim. (ECF No. 48 at 12 n.3.) Further, the Court noted that, "*[a]t this stage*, the Court is satisfied that Plaintiff has standing in that Defendant's alleged deprivation of his private information amounts to an 'injury-in-fact.'" (ECF No. 53 at 13 n.5) (emphasis added).

of Congress" or the legislature that enacted the provision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016) (quotation marks omitted); *Patel*, 932 F.3d at 1273 (looking to "[t]he judgment of the Illinois General Assembly" to inform the Article III standing inquiry for a claim alleging a violation of an Illinois privacy statute). The Court does so because historical practice can indicate "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. Also, a legislature's pronouncement may elevate *de facto* injuries that were previously inadequate in law to the status of concrete, legally cognizable injuries. *Id.*

However, the fact that a legislature has "grant[ed] a person a statutory right and purport[ed] to authorize that person to sue to vindicate that right" is not by itself sufficient for standing. *Id.* "When a legislature has enacted a 'bare *procedural*' protection, a plaintiff 'cannot satisfy the demands of Article III' by pointing only to a violation of that provision, but also must link it to a concrete harm." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1550) (emphasis in original). In contrast, if the legislature identifies a substantive right, a plaintiff may bring a claim against the infringement of that right without "alleg[ing] any further harm to have standing." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th Cir. 2017); *see also Campbell*, 951 F.3d at 1118 (concrete interests protected by the Electronic Communications Privacy Act and the California Invasion of Privacy Act, which protect a consumer's "substantive privacy interest" in his communications against someone intercepting those communications "who does not have the right to access them"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017) (concrete interests protected by the Telephone Consumer Protection Act, which "establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent").

Thus, the standing question turns on whether the constitutional provision relied on by Plaintiff can be properly understood as granting persons in his position a substantive right to judicial relief. *Warth v. Sedin*, 422 U.S. 490, 500 (1975). Article I, section 1 of the California Constitution guarantees certain inalienable rights, "[a]mong these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., art. I, § 1. The Constitution's protection for "privacy" was added by a ballot initiative in 1972 to address the "accelerating encroachment on personal freedom and security caused by increased surveillance and data collection activity in contemporary society." *White v. Davis*, 13 Cal. 3d 757, 774 (1975). The ballot initiative purported to address four primary mischiefs: "(1) 'government snooping' and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of existing records." *Id.* at 775; *see also Goodman v. HTC Am., Inc.*, No. C11-1793-MJP, 2012 WL 2412070, at *14 (W.D. Wash. June 26, 2012).

Plaintiff asserts standing under the California Constitution with respect to the first mischief – "snooping." (*See* ECF 58 at 15 ("This case is about conduct that is akin to snooping or spying because Avis—without adequate disclosure or consent—has collected, continues to retain, and has failed to protect information that it never was authorized to have in the first place.") (emphasis omitted)). However, Plaintiff's conclusory assertion of "snooping" is belied by the allegations in the FAC. There is nothing in the FAC suggesting that Avis took affirmative steps to "snoop" into Plaintiff's mobile device, or even that Defendants accessed any of Plaintiff's Private Data that may have been transmitted to the rental technology. In fact, Plaintiff's theory of liability relies on the assertion that Avis improperly ignored the Private Data. (TAC at ¶ 31 (alleging

that Defendant "failed to promulgate or otherwise maintain responsible policies and procedures associated with the Rental Technology's collection and storage of Private Data")). Similarly, Plaintiff alleges that Defendant failed to take steps to prevent third parties from accessing and misusing the data – *not* that Defendant actively reviewed any collected information. (*Id.* at ¶ 5.)

Plaintiff also asserts standing on the basis that Defendant collected his Private Data. (ECF No. 58 at 15; TAC at ¶ 29 ("Private Data available on the consumer's Device is collected by, copied to, and/or transferred to the Rental Technology.")). However, that alone is insufficient to create standing as the California ballot initiative sought to address the "overbroad collection *and* retention of unnecessary personal information." *White*, 13 Cal. 3d at 775 (1975) (emphasis added). Here, there is no allegation that Defendant has taken steps to retain the information collected by their vehicles. There is also no allegation that Defendant represented to customers that they would protect any Private Data that was collected by the rental technology.

The Court's reasoning, moreover, finds support in the common law of privacy, which the Supreme Court of California has held provides the applicable standard for constitutional privacy claims. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (noting "[t]he right to privacy in the California Constitution sets standards similar to the common law tort of intrusion" and treating plaintiff's allegations of a privacy violation under a combined rubric.); *accord In re Google Assistant Privacy Litig.*, No. 19-CV-04286-BLF, 2020 WL 2219022, at *18 (N.D. Cal. May 6, 2020); *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 437 (N.D. Cal. 2017).

"Violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Patel*, 932 F.3d at 1272); *see also In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1215–16 (C.D. Cal. 2017) (describing the development of the right to privacy at common law); *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *18 (treating

a claim for intrusion upon seclusion and invasion of privacy under the California constitution together because "the common law and constitutional sources of privacy protection under California law are closely related"). The Supreme Court has recognized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). Tellingly, privacy torts do not always require additional consequences to be actionable. *See, e.g.*, Restatement (Second) of Torts § 652B cmt. b. (Am. Law Inst. 1977) (recognizing the tort of intrusion upon seclusion, for which the "intrusion itself" makes the defendant liable).

There is no question, moreover, that the right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger*, 876 F.3d at 983 (quoting *U.S. Dep't of Justice*, 489 U.S. at 763). That right extends to sensitive information contained on people's phones. *See Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018) (recognizing the "vast store of sensitive information on a cell phone"); *Riley v. California*, 573 U.S. 373, 395 (2014) ("An Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns"); *Goodman*, 2012 WL 2412070, at *12 (finding plaintiff had legally protected interest in GPS location information); *Williams v. Superior Court*, 3 Cal. 5th 531, 554 (2017) ("home contact information is generally considered private") (quotation omitted); *In re Ricardo P.*, 7 Cal. 5th 1113, 1122–23 (2019), as modified (Aug. 28, 2019) (finding that an overbroad probation condition requiring the disclosure of device-related passwords "significantly burdens privacy interests") (citation omitted).

However, the issue is not whether the California Constitution or the common law affords protection to sensitive information. Rather, the salient question for the purpose of determining standing here is whether the right of privacy recognizes an action based on Defendant's failure to make "adequate disclosures" that the Rental Technology can "collect and indefinitely store" a customer's private information, (TAC at ¶ 6), or

Defendant's failure to delete sensitive information from rental vehicles following their return. (TAC at ¶ 33.) The Court concludes that the common law tradition does not recognize either conduct as violative of Plaintiff's right of privacy.

"Although there is a common law tradition of lawsuits for invasion of privacy, the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts." *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930–31 (8th Cir. 2016) (citations omitted); *accord Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) ("If, though not timely destroyed, [the personally identifiable information] remained secreted in the video service provider's files until it was destroyed, there would be no injury."); *Gubala v. Time Warner Cable, Inc.*, No. 15–cv–1078–pp, 2016 WL 3390415, at *5 (E.D. Wis. June 17, 2016) (dismissing complaint for lack of concrete injury where plaintiff alleged only that cable operator retained personally identifiable information); *see also* Restatement (Second) of Torts § 652A (Am. Law Inst. 1977). To the extent that Avis has lawfully obtained confidential information, and does not further disclose or use that information, the Court finds that the common law does not recognize such conduct as an invasion of Plaintiff's right to privacy. Nor does the common law recognize a parallel right which requires Defendant to delete lawfully obtained information where Defendant has not disclosed that information to others.

In light of the foregoing authorities, the Court finds that the common law history of the right to privacy, and the California Legislature's judgment as embodied by the state constitution and the relevant ballot initiative, do not support a finding that Plaintiff has alleged a violation of a substantive right that is sufficiently concrete to establish standing.[2] *See Spokeo*, 136 S. Ct. at 1549; *Eichenberger*, 876 F.3d at 983–84.

---

[2] Plaintiff also asserts that standing is satisfied in alleging "overpayment." (ECF No. 58 at 16.) However, Plaintiff does not actually allege overpayment in the TAC. Moreover, this theory depends upon a

12

### B. Remand to State Court Is Required as There is No Article III Standing

Plaintiff argues that, if the Court finds Article III standing is lacking, it must remand the case to California state court for improper removal. (ECF No. 58 at 18–19.) Defendant responds that remand would be inappropriate as Plaintiff's claims are futile. (ECF No. 59 at 9–10.) The Court concurs with Plaintiff and remands to state court.

A suit brought by a plaintiff without Article III standing is not a "case or controversy." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998). An Article III federal court therefore lacks subject matter jurisdiction over the suit. *Id.* In that event, the suit should be dismissed under Rule 12(b)(1). *See Steel Co.* at 109–10; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

Moreover, where the case is premised on state law claims, "[r]emand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the federal courts have no power to adjudicate the matter." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). State courts, on the other hand, are not bound by the constraints of Article III. *Id.* (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)). This rule applies with equal force to a case removed pursuant to CAFA as to any other type of removed case. *Id.* (citing 28 U.S.C. § 1453(c)(1)) (other citations omitted).

Here, the Court could permit a Plaintiff to file an amended complaint and then attempt to allege new facts that would cure the standing issue. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1073 (9th Cir. 2011). However, Plaintiff does not seek leave to file an amended complaint or offer any additional facts that would address the deficiencies identified by the Court. Instead, Plaintiff asserts that the Court "must" remand if it determines that there is no Article III standing. (ECF No. 59 at 18.) Consequently, the

---

determination that Defendant had a duty to delete the personal data. Given the Court's conclusion that there is no such duty, and that Plaintiff's right of privacy is not impacted by Defendant's failure to delete the information, the overpayment theory has no legal basis.

Court will abide by Plaintiff's request to remand the case to state court and deny leave to amend the TAC.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss the TAC under Rule 12(b)(1) and **REMANDS** the case to state court.

**IT IS SO ORDERED.**

Dated: September 2, 2020

Hon. Gonzalo P. Curiel
United States District Judge